being with us here today. We will call our second case of this afternoon. United States v. Arrington, number 19-2973. Mr. Block. And he's being supervised by Mr. Roth. And then on the government side, Mr. Consiglio. Take your time setting up. May I proceed? Hang on for just one second so everybody gets set. Whenever you're ready. May it please the court. My name is Jeffrey Block, and I, along with my supervising attorney, David Roth, represent the appellant, Michael Arrington. Thank you. And do you wish to reserve any time for rebuttal? Yes, with the court's permission, we'd like to reserve three minutes for rebuttal. That's fine. Thank you. In Rock v. Arkansas, the Supreme Court recognized that criminal defendants have a right to testify. Only the defendant may waive this right, and such a waiver must be knowing, intelligent, and voluntary. So here you've got a 2255. And it reads, in one sense, pretty flexibly. But in another sense, you run into a very difficult practical problem, which is district courts simply don't have the time to have evidentiary hearings that take up a significant amount of time. And there has to be some way that we give guidance as to when. And what is your argument that 2255 should require, in this case, with these facts, an evidentiary hearing? Your Honor, two responses. First, we'll note that the presumption is that an evidentiary hearing is required unless the district court can conclusively determine that the habeas petitioner is not entitled to relief. That's why this court in Palmer recognized that the standard need not be onerous in order to entitle a petitioner to an evidentiary hearing. Moreover, this court's decisions in Booth and Solace both recognize that in cases where a habeas petitioner makes an affidavit with a reasonable factual pattern, and it's not conclusive as to whether the habeas petitioner would be entitled to relief or not, that an evidentiary hearing is warranted. Let's assume for the sake of discussion that we agree with that, and we thought that on Strickland Prong 1, Mr. Arrington had a good case. Turning to Prong 2, the district court considered that and said, in effect, had you exposed yourself to cross-examination, there would have been no trouble. People would not have been inclined to believe you. I think the way the court put it was, upon review of the entire record, the court finds petitioner's proposed testament cannot reasonably have affected the outcome of the trial. How do you deal with that, Mr. Block? How do you deal with the fact that, had he gotten on the stand, your client's very lengthy record, including multiple parole violations, multiple encounters with the police, resisting and fleeing arrest, would have come in front of the jury? Two responses, Your Honor. First, here the question is whether or not the district court could conclusively determine that Arrington was not entitled to relief. The district court did not make that determination here. On page 10 of the district court's opinion, it simply says that it could not reasonably have affected the outcome of his trial. On the issue of impeachment itself, because of the fact that neither the government nor the district court fully understands what exactly Arrington would testify to, which an evidentiary hearing would provide, neither... I'm trying to get you to focus, Mr. Block, on the reality that the defense counsel was allegedly focused on, which is you have a horrible record, and if the jury hears this, including your involvement with illegal drug dealing in the past, you're just going to be destroyed on the stand. I don't want you on the stand because of that reason. Now, is the court not entitled to consider the consequences of that information coming in front of a jury? Your Honor, the court is absolutely permitted to account for that. But here, both the district court and the government in its brief hedge on the issue of whether or not any impeachment evidence could be introduced, because without understanding his full proposed testimony, which an evidentiary hearing would provide, it's not clear that any could conclusively come in. Both the government on page 34 of its brief says that there's a reasonable probability that some of his convictions might have come in, and the district court on page 11 says that had Arrington testified, it would have created the possibility that some of his prior convictions would have come in. But the fact that there's a possibility that some of his convictions might have come in does not reach the conclusiveness standard that this court requires in Booth and Solace to conclusively decide. Let's assume that we read this. It's a fair point you make. But let's assume we read this ourselves and say we are confident this evidence would have come in, right? They may have hedged, but there was no reason for hedging. They were just giving, you know, there's nothing that suggests this wouldn't have come in, right? And I think there's a very strong case in the rules for this coming in. There's an unsettled issue that follows that, which is, do we look at prejudice through the lens of a jury that is scrupulously following its instructions? And we tell jurors, consider this evidence only as to credibility. So the most this evidence could do would be to bring his alibi back down to zero. Or do we look at it in a more psychologically realistic way? There's this courthouse wisdom that the jury, even if it's instructed, may well be viewing this as going to this guy's very guilty, right? Even though they shouldn't, even though we tell them not to. I haven't found authority that goes either way on that question. Have you? Do you have anything that addresses which way the court should be gauging prejudice? Your Honor, I'm not off the top of my head, but I think here we have to assume that the jury can reasonably comport with the judge's instructions, which would be not to treat that evidence as propensity evidence. And so here, where his Arrington's flight from parole was the only evidence that the government introduced that didn't face serious credibility issues. Would the district court have committed legal error? I guess my question, if the district court took a realistic approach and said, based on my observations of jurors in the past, it would have been worse for this guy. To introduce this precedent on a tangential issue, right? The flight from parole is not the core of guilt here. It's a side issue, right? Would have been worse for him because not only would it have destroyed, you know, I don't, I don't even, even if he's completely credible, I don't think it would have done much for him and it would have really hurt him on the core issue of like, oh, drug dealer wants drug dealer again. Would the court have committed legal error if it reasoned that way? Yes, Your Honor, I believe it would. The notion that the jury would in reality treat this as propensity evidence would simply, you would simply assume that the jury couldn't comport with the judge's instructions, which is not what we should, what we should assume here, here and here on the issue of what the value of Arrington's flight from parole is. It's not simply to show consciousness of guilt. If we look to page 346 of the trial transcript, the government used Arrington's flight from parole, not only for consciousness of guilt, but also to buttress the serious credibility issues facing the government's witnesses on page 346 of the transcript. The government said that they're saying that this letter, which was a letter one government witness sent to another asking Bobby Sue Miller, one of the government's witnesses, to lie about Arrington's involvement, they're saying that this letter somehow inspired this guy to leave his job in parole and get out of the jurisdiction. There are so many problems with that. So the flight from parole was not just on consciousness of guilt, but also was to buttress the serious credibility issues facing the government's case. Is there something wrong with using the flight for that purpose? I don't believe so, Your Honor, but I think it goes to the value of how powerful it was that Arrington never explained why he fled from parole. Well, there's no question that this was significant. I don't even think the other side is arguing that it's insignificant. In fact, the very fact that your client succeeded in keeping his criminal record out with a motion in limine indicates that, you know, all this information, his prior record, the flight, those things were significant and they were anticipated to be significant. Having said that, though, even if the district court hedged and said, well, I think these things would have come in, didn't say these things were going to come in, even if the government said that, isn't it, in fact, the case that under Rule 609, once your client got on the stand and started saying, I had nothing to do with that, nothing to do with it at all, I was worried because I didn't know what I was doing. I was worried because I hadn't paid my rent and I moved. And it turns out that these people I knew were into drugs and so I was associated. All these things were making me worried I was going to get violated on my parole and leave. If he says those things and the government proffers, look, I've got this parole violation, this parole violation, this conviction, this drug dealing conviction, and under what realistic scenario is a district court judge going to say, you know what, I'm just not going to let you put that in. I just don't think, even though he's gotten on the stand, put his credibility at issue and denied any involvement, I'm not going to let you put in all that record evidence. And as this court recognized in U.S. v. Caldwell, even in situations in which a conviction is within the 10-year window, the passage of time may decrease the probative value. It may, but that doesn't decrease its admissibility and you were certainly going to be free to argue in front of a jury, yeah, yeah, never mind all that, never mind all that, but isn't it just highly likely that the information is going to come in and when it comes in, his claims about I was worried because I hadn't paid my rent and moved are going to be treated by the jury as I just don't buy that. And that's bad because this guy has had real trouble with the law before and he was going to be, he was going to be not believed by the jury. There are two brief points. First, we'll note that the judge, that the district court below when deciding this, the admissibility of this evidence under Rule 404B already ruled that some of his convictions could not come in. So there certainly is some chance that some of his convictions might have been admitted. But at this stage where the question is, can we conclusively determine that Aaron can be not prejudiced by this, then I think that whether or not some of his convictions might have come in and the jury might have, you know. This is the argument you made about it being speculative, but isn't it the case that the judge made that decision not under 404B, but under 403? You got a good ruling for Mr. Arrington. Somebody did under 403. But once once he takes the stand and puts his credibility at risk, it's a whole different ballgame, isn't it?  Your Honor, certainly some of Arrington's prior convictions may have been admissible. But two things on this, two brief responses on this point. First, an evidentiary hearing exists to flesh out these questions because whether or not Arrington's prior conditions could come in can only be determined once we actually understand the full context of what he would testify to. And second, even if some of his convictions came in, I don't believe that the district court could conclusively determine that he was not entitled to relief. And I think as we cite in our brief a district case, USV Mitchell, which out of the Western District of Virginia, there the district judge said there's overwhelming evidence of the defendant's guilt. I don't think it's likely that even if he was able to testify that we'd come to a different result. But because I'm not 100 percent certain I can't conclusively determine that he's not entitled to relief, it's my obligation under 2255 that I have to conduct an evidentiary hearing. Well, that's that's the nub of the issue. When do you and when do you not? Why don't we hear from Mr. Consiglio? We'll get you back in rebuttal. Thank you, Your Honor. Please support Mike Consiglio on behalf of the United States. In your briefing, you rely primarily on our decision in Palmer with a proposition that a habeas petitioner must allege a meritorious claim of prejudice to get a hearing. But Palmer involved 2254. This is a 2255 case, different statute. And wouldn't Dawson, a case in Dawson, written by Judge Hunter, be more apropos? I would agree, Your Honor. Judge, the opinion in Dawson really lays out the steps that are supposed to be taken under a 2255 challenge. And Dawson says that if a non-frivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice, then only then do you not get a hearing. So the court says if there's a colorable claim for a hearing. And it seems to be that that's following the statute's words, a more flexible test than what you would normally see for 2254. Isn't that correct? That's true, Your Honor. So essentially, I guess what you're saying here is that his claim that Mr. Kress was ineffectively assisting him was a frivolous claim. Is that in effect it? No, Your Honor. I think the district court found that it was not a frivolous claim. The district court walked through the progression first to see whether it was frivolous or non-frivolous. Then went to see whether assuming the defendant's statements as true and considering it in the totality of the record, whether the defendant would conclusively establish by first there was deficient performance and second whether prejudice. But to conclusively establish is a burden on the government under Dawson. And the district court found, and I believe that the sentence referred to by Judge Jordan in the opinion is essentially a finding of conclusions with respect to that particular point. So let's talk about what's at issue before us. First of all, the district court found no deficient performance. You're not defending that before us. No, and Your Honor, in our briefing, the government even misreported that. The district court did make that reference to the extent it confused. District court said that and the district court erred on that. So we're already, we're facing a district court opinion that has some issues here. All right. Next, the district court has to make every assumption in Errington's favor if it's not holding a hearing, right? Yes, Your Honor. Did this district court make every assumption in his favor? Did it assume that he would be credible, that he would testify credibly? The district court did make that assumption that his testimony would be presented as he alleged in detail with respect to the issue of flight. And but the court also considered that in conjunction with the totality of the evidence and the record of where that testimony would correspond or contradict evidence from other witnesses. But the way the court phrased it was it said there's no prejudice because the evidence apart from his flight was sufficient. Is that the right legal test, whether there's enough other evidence that would have been sufficient to convict him? The district court said in totality there was more than sufficient evidence for this. Right. But more than sufficient is not the right test. I mean, Strickland is a reasonable probability for an outcome. A jury could still have convicted him. Maybe a jury likely would have convicted him, but there could still have been a reasonable probability that the jury wouldn't. So more than sufficient doesn't sound like the district court got the legal burden right. And it's the and since we're at this gatekeeping stage of whether to hold a hearing, my colleagues are right that the burdens on the government to show that there's no reasonable probability the outcome would have been different. So more than sufficient is a misstatement of law, isn't it? To the extent that that one sentence is read out of the context of the total 36 page opinion, where the district court does identify the correct standard and statement of the law earlier in the decision, as well as the standard that should apply for whether Mr. Consiglio, the judge, the very, very fine district court judge. But she expressly referenced criminal rule 29. She says, I'm doing this because for the same reasons it was to say the court finds now, as it did when denying petitioners partial rule 29 motion trial, that the government's case against petitioner was more than adequate to secure conviction, even without evidence of petitioners parole violation, that that rule 29 standard, that's just a different standard than the Strickland standard. Right. Those are two different things, aren't they? And your honor, with respect to that particular sentence in the decision, I can't address it any further than the way the judge wrote it, other than she did articulate correctly in detail earlier in the decision and the appropriate standard that does apply. Point is to where she's applying the Strickland standard for prejudice. And so that we could do just what you said. OK. It appears it's in the joint appendix, 13, page 10. The district court is describing the Strickland standard and describing the standard for when counsel's performance would be deficient and when he would be entitled to relief under section 2255. Yeah, no, no question that on page 11, she cites the reasonable probability standard. I guess what I'm looking for is someplace where we can see. And I would have expected it at pages 22, 23, 24 in that range to see that more specific application. Can you point us to any language? The only section I can see is looking at the decision, page 22, joint appendix, page 25, where she addresses the Strickland prejudice prong, and where she describes that what would be required generally for Strickland to apply under prejudice. So when I'm looking at that, I mean, I think there's a general recitation of Strickland earlier, but the place where the rubber meets the road is at joint appendix 25 to 26. And on 25, we have this, you know, there's a statement that he didn't assert his innocence, and it suggests the burdens on the petitioner, which in this context, it's complicated, because we're talking about whether he even gets a hearing. And then on joint appendix 26, there's this rule 29, more than adequate standard. And on joint appendix 27, page 24, the court is saying the court cannot say his testimony would have been more persuasive. But it can't say that because it didn't hold a hearing to determine whether it's credible. So it does seem like there might be an error of law, me speaking. Now, fine district judge, maybe the district judge was speaking imprecisely, but this is the written decision, and it's at the key point in the analysis. And it does seem like this is not turning square corners on the correct way to phrase the burden as to whether you even get a hearing on Strickland. And the square corner, I think, which is most appropriate and which is decisive for the appeal, is the first sentence of the first paragraph on page 23 of the decision and page 26 of the decision. It could not have reasonably affected the outcome of the trial. Okay, let's focus in on these witnesses. The court focuses there are three main witnesses in this case, Davenport, Miller, and Sullivan. Okay, and then there's a fourth one who Graf says he's associated with Davenport and Sullivan. Now, I thought one of the more powerful points in Appellant's brief was Davenport writes to his girlfriend Miller and says lie and peg this on Arrington. And that's a lie, right? And so we've got a real problem here. This is a cooperator-based case. There are no videotapes, no physical evidence, nothing like that. And it's based on three cooperators. Two of them are boyfriend and girlfriend who have been plotting to peg this on them. All three are getting the benefits of cooperation here. So given jury skepticism about cooperators, how can we be that sure that something at the margin here might not have made a difference? It would be different if we had a video and undercover. We don't have that here. And a couple of points in response to that, and this is part of having been the trial counsel in this. And the district court who has resolved this 2255 petition actually sat through all the proceedings. The guilty pleas, the testimony of this proceeding, the sentencing for all the defendants and co-defendants in this case. And it was the district court's assessment of the totality of the evidence in the record that an explanation about flight and that letter, this issue between Omar Davenport to Bobby Sue Miller, that that was not going to change the outcome of this proceeding. If I could explain from the record a little more, which might be helpful. Please. If the court recalls from the trial record, Bobby Sue Miller is in a car driving back from New York with 100 grams of heroin. She gets pulled over Interstate 81. She gets arrested. She is interviewed that night, and she identifies Omar Davenport. She doesn't identify Errington. She doesn't identify the defendant, but she identifies Omar Davenport. And she points the finger at him, and she gets consent, and they go to her apartment, and they find heroin and marijuana and the drug paraphernalia to help build this whole case. While she is in jail, she gets a letter from Omar Davenport. And the letter from Omar Davenport is, hey, they're going to pin this on me. Point the finger at the defendant. Here's where that logic sort of falls apart. She didn't take the bait. She went after Omar Davenport and the defendant, but Omar Davenport. The impetus behind that letter was to deflect away from Omar Davenport. She didn't follow through on that. She's the reason why Omar Davenport primarily was serving a 200-month sentence in this case. She cooperated. And another part of it which may not leap from the record on this is how much time lapsed. This stop happened in February of 2009. The arrests and initial appearances, et cetera, happened within the next month or so. Mr. Errington is indicted six months later, and then he stays on the lam. He's not arrested or brought into federal court for this case for close to two years after that and doesn't come to trial until close to three years or more than three years after the incident. By the time Bobby Sue Miller is on the witness stand testifying, she has already pled guilty. She's already been sentenced. She already served her year in prison. She's halfway through her supervised release. It's almost over. Omar Davenport, everybody else in the case is the exact same circumstance. Their case has been done, and they are on their way to serving sentence. True. They can still get a Rule 35 motion. And that's absolutely correct, Your Honor. But the thought that looking at this record in its totality that Bobby Sue Miller or any other combination of these participants were playing three-dimensional chess, plotting to find a scapegoat to give them extra cooperation credit, that's not the way this case broke out. It was a series of people arrested at different times and pointing the finger at each other, and it was almost all resolved by the time we got to the point of trial. That's helpful, but I'm not sure it's conclusive. I want to put this together with something I asked your opposing counsel about, which is how does this side issue of flight play with the impeachment evidence? As I said, I haven't been able to find authority either way on whether we presume the jury would have followed its instructions, because if it would have, then it couldn't have held his prior convictions against him. Or do we take a more realistic approach that, if anything, this would have had some blowback, that there was heroin dealing and he was involved in shooting somebody and those things? Do you have any law either way on what's the right way for the district judge and for us to analyze prejudice? I don't have any law either way on that. I agree with the defense on this point. It's got to be that we must trust the jury is going to follow their instructions, and that's got to be the scope and the perspective that we look at this. And I do want to round up with one last point while I have a moment here, and I think it's important because you identified this flight circumstance as a side issue, and I think that was partly lost in this record. This flight evidence was never mentioned in opening statements by either side. It wasn't mentioned by the government in closing arguments. The first time it comes up in the argument section is when the defense counsel talks about it for a couple of paragraphs, and then in my rebuttal, I talk about it for a couple of paragraphs in response. The idea that the detailed description from the defense was to this essential issue of the case is just not what this case was about. It was a bunch of cooperators who pointed the finger at each other and just corroborated in different ways. The flight was a side issue. But if he had testified, it would have been taken on a higher level. What made all the difference is the position they're taking. Now, the district court judge, my colleagues will indulge me for a minute, seemed to say, and you certainly argue, that the statement that Mr. Arrington makes in his declaration about having nothing to do with it is akin to the blanket generalized denial in Palmer and therefore shouldn't be given any credence. In the reply brief, the counsel for the defense makes the point that there's a significant difference here because, in fact, Mr. Arrington didn't just say it had nothing to do with it. He did say that, but he went on to say his own account of why he did flee, the reasons behind it, in some detail, and giving those reasons is not just an unadorned blanket statement of innocence and therefore you can't fairly compare it with Palmer. What's your response to that? And I guess I was jumping the gun by describing how it wasn't mentioned in opening and closing. If we can measure it, it's hard to measure the value of particular pieces of evidence generally. Sure. Before you answer, let me try to put a finer point on it, given the time. This is part of the district court's decision, it seems, and it's certainly part of your argument, that you just need to discount this declaration because it's a generalized statement of innocence. They're saying it's not a generalized statement of innocence, and that's why Palmer doesn't apply. Is that wrong? It's a generalized statement of innocence with respect to the crime itself. He said, I didn't do it. With respect to flight, he has a very particularized description of why he fled. Of all the testimony in this case, some 250 pages of testimony in this case, I counted the number of pages where the two witnesses who described the flight, they come in. It's a total of about 14 pages of testimony, out of 250 or so, just to get a sense of how, not that it wasn't consequential and not that it wasn't of value to the case, but this case was fought on the witnesses themselves who sold drugs with him, who observed peripheral conduct with him. All of whom had deals, however, did they not? Yes, yes, they did. If you, I mean, a lot of this comes down to prejudice, and your argument is that what occurred here did not prejudice Mr. Arrington because, if you were to finish that sentence, what would you say? Oh, it would not prejudice because if he had testified at his proceedings, the circumstances that would have followed from his testimony would not have benefited his case. I could go on and on about why that is. I know I'm way over my time. That's right. But defense counsel in this case, Mr. Kress, he really effectively got this point in front of the jury, the points he wanted to make, without having the government cross-examine or beat up the defendant on the witness stand with facts and a background and a long history of aliases and a long criminal history and a history of flight and violating parole and all of those twists and turns that really would have faced Mr. Arrington if he had gotten on the witness stand. His defense counsel was pretty effective by just zeroing in on it in his closing argument, laying out the general possibilities of what his flight could mean, and then I'm kind of handcuffed in my closing argument. How do I respond to that? Because I don't have facts or details to get at. I just can simply say I kind of have to navigate between not commenting too much on a defendant's Sixth Amendment right to remain silent and a right not to present any evidence or burden. When a defense counsel does that in closing argument, it's good advocacy because it handcuffs us. That really put this defendant in the best posture under the totality of the circumstances, and the district court did not abuse her discretion by looking at all of this and saying, upon a review of the record, the court finds the petitioner's proposed testimony could not reasonably have affected the outcome of his trial. All right. Thank you very much. That's a good segue to Mr. Block. And how would you respond that despite those statements that there was no prejudice and, in fact, prejudice was obviated by Mr. Kress's conduct here, that, in fact, that's not true and there was significant prejudice? Your Honor, here the only question before this court is whether or not the district court used its discretion in denying Arrington his habeas petition. But one of the factors you take into account is prejudice. Your Honor, here the prejudice was that he wasn't able to testify as to exactly why he fled from parole. And although the government suggests that the focus of its case was on the testimony provided by the cooperating co-defendants, twice during its rebuttal the government focused the jury's focus right before they went into the deliberation room on his flight from parole. And so the fact that he never explained why he fled from parole prejudiced his defense because Kress simply suggested that it didn't make sense that Arrington fled from parole only to return back to Harrisburg. That's quite different from the defendant having the opportunity to take the stand to proclaim his innocence and to explain his actions. Let's assume you're Mr. Kress and you've got a question. It's been brought up by your client as to whether you should take the stand. And you know if he takes the stand a host of bad information is going to come into play. Prior record, aliases, a host of other things, convictions relating to drugs, et cetera. And your client kind of wants to explain why it is that he absconded with respect to, you know, from his parole restrictions. What do you do if you're Mr. Kress in that situation? Your Honor, I admit that Kress may have made a strategic decision, but that's not the issue here. Arrington's constitutional right to testify was violated. His defense counsel never informed him of his right to testify. And in accordance with this court's decision in government of Virgin Islands before K, because the district court did not conduct an evidentiary hearing, we must treat Arrington's non-frivolous allegations as true. And so again, the question is not whether or not Arrington's defense counsel was competent or whether he made a strategic decision. Arrington says no. I think everybody's agreed, Mr. Block, this comes down to one question, prejudice. The government even concedes, right, on the basis of the law. And at this point, unrebutted and untested declaration by your client. You know, you could theoretically end up in front of the district court and she hears it. And Mr. Kress says, of course I told him. And it's all over because she says he's a liar. But leave all that aside. Here we're just thinking about prejudice. Is there prejudice? Because as Judge Ambrose pointed out, and I think you acknowledge, the law is that if, as Dawson says, if you don't have, if you can't show prejudice, then you're not entitled to a hearing. Isn't that the, isn't that the way that works? Yes. And I see my time has expired, may I? Please. Go ahead. Your Honor, certainly if there was no chance that Arrington was prejudiced, if, for example, there was overwhelming evidence of his guilt, then perhaps the district court didn't need to conduct an evidentiary hearing. But if we look at this court's decisions in Booth and Solace compared to this court's decision in Lilly, we understand when an evidentiary hearing is required. For example, in Booth, where the defendant said that he was never informed of his right to conduct an open plea, the court said that given that specific factual allegation and the fact that we can't be sure at this point whether or not he was prejudiced, the district court has to conduct an evidentiary hearing. In Solace, the defendant said, I was never informed, or excuse me, the defense counsel did not adhere to my instructions to file an appeal. And there again, the district court said, or excuse me, this court said, we have to conduct an evidentiary hearing. Meanwhile, in Lilly, in Judge Ambrose's opinion, this court noted that there was overwhelming evidence of the defendant's guilt, that there was physical evidence linking the defendant to the drug trafficking conspiracy. Surveillance, eyewitness testimony. And so here we have... That's true. Those are all distinctions. And I guess what it really comes down to is, is the district court within its discretion to look at a record, an extraordinary record, frankly, like your client's, and say, he gets on the stand, that's going to come in, he's going to be destroyed, and say, it wouldn't make a difference. It couldn't have made a difference in this trial, because any credibility the man would have had would have been shattered. Is it outside the district court's realm of discretion to say, I look at that, and that is overwhelming. That's overwhelming evidence that he's not to be believed, and they won't believe him. Can a district court properly do that? Certainly, Your Honor. But here we allege that, first, the district court made four key errors, which we brought up in our opening brief and our reply brief, which the government never responds to. And second, just based on the standard alone, here the government suggests that now it's not a sufficiency standard. But that's an abuse of discretion when the district court doesn't make the conclusive determination that Arrington conclusively was not entitled to relief. The fact that the district court on page 10 of its opinion didn't talk in terms of conclusiveness. It simply said, upon a review of the entire record, the court finds that petitioner's proposed testimony could not reasonably have affected the outcome of the trial. That is an abuse of discretion. And so given the errors made below by the district court, we believe that a remand would be appropriate. All right. Thank you very much. I want to ask if a transcript could be prepared of this whole argument, and I would ask the government if you'd be willing to pick that up, the cost for that. Thank you. Thank you to both counsel for extremely well-done arguments. Mr. Block, obviously I guess this is your first time before a court of appeals. I hope you are before courts of appeals often in the future. You have, I think, a great future in front of you. I thank Mr. Roth and your firm, Wiggin and Dana, for supervising on this matter. It is a privilege to have you before us in every way, both counsel on both sides.  Thanks.